## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

GARY TESCH, )
)
      Plaintiff, )
) No. 05 C 6400
v. )
) Judge John W. Darrah
SBC GLOBAL SERVICES, Inc., )
)
      Defendant. )

### MEMORANDUM OPINION AND ORDER

Plaintiff, Gary Tesch ("Plaintiff" or "Tesch"), brought suit under the Americans with

Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. (the "ADA"), against Defendant SBC Global

Services, Inc. ("Defendant," "SBC," or "the Company"). Plaintiff alleges that Defendant:

(1) terminated Plaintiff's employment, at least in part, due to Plaintiff's disability; (2) refused to

accommodate Plaintiff's disability by denying Plaintiff the opportunity to work at home, the use

of certain expense accounts and a company car; and (3) retaliated against Plaintiff due to his

assertion of rights under the ADA. Plaintiff seeks damages and reinstatement.

### BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of

material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Plaintiff was hired by Defendant as a Competitive Account Executive ("CAE") on

May 27, 2003. (Def.'s 56.1 ¶ 4.) In September 2003, Plaintiff's supervisor gave him a written

monthly review, showing that Plaintiff failed to meet any of his sales goals for the preceding

month. (Def.'s 56.1 ¶ 5.) After receiving this monthly review, Plaintiff submitted medical documentation to the Company, indicating that he had permanent work restrictions due to his diabetes and neuropathy. (Def.'s 56.1 ¶¶ 6-9.)

Plaintiff was diagnosed with diabetes in July 2003 and with diabetic neuropathy in September 2003. (Def.'s 56.1 ¶ 69.) Plaintiff's symptoms included burning sensations, pain and weakness in his arms, feet and lower extremities. (Pl.'s 56.1 ¶ 1.) Plaintiff's diabetes and neuropathy limit him only with respect to his participation in certain recreational activities and in his ability to work and perform certain tasks related to work. (Def.'s 56.1 ¶ 70.) As of July 29, 2005, Plaintiff was able to work more than eight hours per day and more than 40 hours per week. (Def.'s 56.1 ¶ 73.) Plaintiff was able to sit for up to four hours in an eight-hour day with breaks every two hours and was able to stand for up to three hours in an eight-hour day with breaks every one-and-one half hours. (Def.'s 56.1 ¶ 72.) Plaintiff is able to walk for up to four hours in an eight-hour day and on some days has no difficulty walking. (Def.'s 56.1 ¶ 76.) Plaintiff's diabetes and neuropathy have never rendered him completely unable to walk. (Def.'s 56.1 ¶ 76.) Plaintiff has never been totally unable to work for any period of time because of his diabetes and neuropathy. (Def.'s 56.1 ¶ 74.)

In September 2003, Plaintiff contacted Cynthia Williams of Defendant's Human Resources Department to ask about the process for requesting a change of assignment for health reasons. (Def.'s 56.1 ¶ 6). Plaintiff mentioned that he was having problems with his legs and feet because of his diabetes. (Def.'s 56.1 ¶ 6.) Defendant placed Plaintiff into the Management Medically Restricted Job Search process in February 2004. (Def.'s 56.1 ¶ 9.) As explained to Plaintiff, the rules governing the Medically Restricted Job Search process were the following:

2

(1) the job search would last 90 days; (2) during the 90-day period, Plaintiff would search for another position within the Company that could accommodate his medical restrictions and for which he was qualified; and (3) if, at the end of the 90-day period, Plaintiff had not been selected for an open position that fit his medical restrictions of record, his employment at the Company would end. (Def.'s 56.1 ¶ 10.)

During the job search, Plaintiff could search Defendant's internal job listing, called "CareerPath," and could apply for any position for which he was qualified that fit within his medical restrictions. (Def.'s 56.1 ¶ 11.) Plaintiff was a candidate for any position for which he applied, but the hiring manager for the position had the ultimate authority to choose which candidate he or she wanted to hire. (Def.'s 56.1 ¶ 12.) Plaintiff was assisted in the search by a Human Resources Manager and several assistants. (Def.'s 56.1 ¶ 14.) During the 90-day period of the job search, Plaintiff continued to receive his full salary; but his sales quota was cut in half. (Def.'s 56.1 ¶ 15.)

In May 2004, near the end of the 90-day job search period, Defendant presented Plaintiff with a list of several open positions at the Company for which he was qualified and which fit within his medical restrictions. (Def.'s 56.1 ¶ 16.) Plaintiff elected to accept the position of Account Manager in the Midwest's Messaging, Monitoring, and Audiotext ("MMA") group. (Def.'s 56.1 ¶ 16.) In his position in the MMA group, Plaintiff's primary function was to sell services and equipment to assigned accounts. (Def.'s 56.1 ¶ 18.)

The sales performances of each Account Manager in the MMA group was rated based on how much "net new monthly revenue" ("NNMR") he or she generated. (Def.'s 56.1 ¶ 19.) Except for those who were new to their positions, all Account Managers in the MMA-Midwest

3

group had the same NNMR objective. (Def.'s 56.1 ¶ 20.) During the entire time that Plaintiff worked as an MMA Account Manager, there was not one day or month in which he met his sales goals and objectives. (Def.'s 56.1 ¶ 21.)

In April 2005, Plaintiff's doctor provided a Work Capacity Checklist to Defendant's Associate Director of Job Accommodations, Carla Putnam, which indicated that Plaintiff's work restrictions had changed. (Def.'s 56.1 ¶ 31.) Plaintiff informed Ms. Putnam that he was not able to perform the essential functions of his position based on his current restrictions. (Def.'s 56.1 ¶ 32.) Defendant placed Plaintiff into the Medically Restricted Job Search process for a second time. (Def.'s 56.1 ¶ 33.) Plaintiff's second job search was also scheduled to last 90 days. (Def.'s 56.1 ¶ 35.) If Plaintiff was not selected for an open job position that met his permanent medical restriction at the end of the 90-day period, his employment would be terminated. (Def.'s 56.1 ¶ 35.)

During his second job search, Plaintiff continued to receive his full salary but was not required to meet any sales quotas. (Def.'s 56.1 ¶ 36.) Defendant assigned Diann Taylor to assist Plaintiff in finding a job within the Company that met Plaintiff's medical restrictions of record. (Def.'s 56.1 ¶ 38.) On June 3, 2005, Plaintiff's supervisor, Patricia Battle, reduced the number of accounts in Plaintiff's sales module so Plaintiff could focus more of his time on getting a job that fit within his medical restrictions. (Def.'s 56.1 ¶ 37.) However, at the time Plaintiff entered into his second job search, there were very few jobs being posted to CareerPath and of the jobs posted, virtually none were within Plaintiff's restrictions. (Def.'s 56.1 ¶ 39.)

During Plaintiff's second Medically Restricted Job Search, Defendant offered Plaintiff a sales position, which Plaintiff considered to be a "telemarketing" job. (Def.'s 56.1 ¶ 49.) On July 25, 2005, Plaintiff notified Defendant that he had accepted the telemarketing job. (Def.'s 56.1 ¶ 50.) However, on July 29, 2005, Plaintiff's doctor submitted medical documentation to Ms. Putnam that stated that any inside telemarketing job, call-center positions or any other 8:00 to 5:00 inside jobs were "not acceptable jobs right now." (Def.'s 56.1 ¶ 52.) Plaintiff informed Defendant that the restrictions set out by his doctor made it impossible for Plaintiff to perform his telemarketing job. (Def.'s 56.1 ¶ 54.) Ms. Putnam agreed that the restrictions prevented Plaintiff from performing the telemarketing job, and Plaintiff was reassigned back to his MMA position to continue his job search. (Def.'s 56.1 ¶ 54.) Plaintiff was only at the telemarketing job for two days when he was told to go back to his MMA position. (Def.'s 56.1 ¶ 55.) The telemarketing job was the only job offer that Plaintiff received during his second Medically Restricted Job Search. (Def.'s 56.1 ¶ 56.) Plaintiff's employment with Defendant was terminated, effective September 8, 2005. (Def.'s 56.1 ¶ 59.)

Plaintiff filed three Charges of Discrimination with the EEOC against Defendant: the first on November 24, 2004; the second on July 27, 2005; and the third on September 15, 2005. (Def.'s 56.1 ¶ 47.)

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually

unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)
(*Celotex*). Thus, although the moving party on a motion for summary judgment is responsible
for demonstrating to the court why there is no genuine issue of material fact, the non-moving
party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories,
and admissions on file to demonstrate, through specific evidence, that there remains a genuine
issue of material fact and show that a rational jury could return a verdict in the non-moving
party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-
56 (1986) (*Anderson*); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87
(1986) (*Matsushita*); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind.
Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary
judgment, a court must view all inferences to be drawn from the facts in the light most favorable
to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185
F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475
U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more
than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-250.

## ANALYSIS

The ADA provides that "[n]o covered entity shall discriminate against a qualified
individual with a disability because of the disability of such individual in regard to job
application procedures, the hiring, advancement, or discharge of employees, employee
compensation, job training, and other terms, conditions, and privileges of employment." 42
U.S.C. § 12112(a).

6

A plaintiff seeking to show discrimination under the ADA may proceed under the direct method or under the "indirect" burden-shifting method. *See Timmons v. General Motors Corp.*, 469 F.3d 1122, 1126 (7th Cir. 2006) (*Timmons*). Under the direct method, "the plaintiff may show either direct or circumstantial evidence that points to a conclusion that the employer acted as it did for illegal reasons." *Timmons*, 469 F.3d at 1126. Under the indirect method, after the plaintiff makes out a *prima facie* case, the defendant must articulate a legitimate nondiscriminatory reason for the adverse employment action. *Timmons*, 469 F.3d at 1126. The plaintiff then has the burden to show the employer's stated reason is simply pretext for discrimination. *Timmons*, 469 F.3d at 1126. Here, Plaintiff attempts to proceed under both methods.

Addressing the direct method first, Plaintiff asserts that "a reasonable jury could draw the inference from undisputed, circumstantial evidence in this case that SBC took adverse employment actions against Tesch based on his disability." However, Plaintiff fails completely to point to that circumstantial evidence. Plaintiff merely lists what he considers to be the adverse employment actions taken against him by Defendant – denial of Plaintiff's work-at-home status, delay in awarding Plaintiff a company car, a shift in Plaintiff's sales territory and his termination – and flatly asserts that these actions were taken because of his disability. Thus, while Plaintiff has identified a purported disability and adverse employment actions, he fails to supply any circumstantial evidence showing a causal nexus between the two. Therefore, Plaintiff cannot show discrimination in violation of the ADA through the direct method.

Turning next to the burden-shifting method, to make a *prima facie* case of disability discrimination at the summary judgment phase, a plaintiff must offer evidence that: (1) he is disabled within the meaning of the ADA, (2) he was meeting his employer's legitimate employment expectations, (3) he was subject to an adverse employment action, and (4) similarly situated employees received more favorable treatment. *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007) (*Kampmier*). Defendant argues that Plaintiff has failed to satisfy all but the third of these elements.

The first question is whether Plaintiff is disabled within the meaning of the ADA. An individual is disabled for purposes of the ADA if (1) he has a physical or mental impairment that substantially limits one or more major life activities, (2) he has a record of such an impairment, or (3) he is regarded as having such an impairment by his employer. *Kampmier*, 472 F.3d at 937; 42 U.S.C. § 12102(2)(A). "Substantially limits" means that the individual is unable to perform a major life activity that the average person in the general population can perform or is significantly restricted as to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *Kampmier*, 472 F.3d at 937; 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Plaintiff argues that he is substantially limited in the major life activities of walking and working and that he is regarded as having those impairments by his employer.

With respect to Plaintiff's ability to walk, the parties have no material disagreement. Plaintiff admitted at his deposition and does not now dispute that he is able to walk for up to four hours in an eight-hour day and on some days has no difficulty walking. This degree of mobility establishes that Plaintiff is not substantially limited in the major life activity of walking. In

8

*Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309 (7th Cir. 2007) (*Williams*), the Seventh Circuit held that a man who could only stand for only 30-40 minutes due to a fractured spine was not substantially limited in standing. *Williams*, 489 F.3d at 312. In so holding, the court considered how the plaintiff's ability to stand compared to the average person. The court observed that "common conditions, like excess weight and back pain, impair an individual's ability to stand for long periods" but that "all persons impaired by virtue of common afflictions cannot be disabled." Williams, 489 F.3d at 311 (citing *Mays v. Principi*, 301 F.3d 866, 869 (7th Cir. 2002)). The *Williams* court also looked to the Equal Employment Opportunity Commission's regulations, which provide that a person is substantially limited in the ability to walk if he "'can only walk for very brief periods of time....'" *Williams*, 489 F.3d at 311 (quoting 29 C.F.R. pt. 1630, App., § 1630.2(j)). The court noted that 30-40 minutes was "not a 'very brief' period."

In this case, Plaintiff's admission that he can walk up to four hours in an eight-hour day belies his claim that he is significantly restricted in the activity of walking. Four out of eight hours cannot be found to be a very brief period of time. Thus, it cannot be said that Plaintiff is significantly restricted in the activity of walking as compared to the average person in the general population. Therefore, Plaintiff is not substantially limited in the major life activity of walking for purposes of the ADA.[1]

---

[1]Plaintiff argues that he is entitled to an "individualized inquiry based on the particular circumstances of [his] case" on the issue of his ability to walk, rather than being evaluated based on "strict, objective criteria." However, as Defendant points out, an examination of other cases addressing the issue provides the Court with a framework for analyzing what it means to be "substantially limited." Here, Plaintiff's disability is not as severe as other plaintiffs who have been found not to be substantially limited in walking.

9

Turning next to Plaintiff's ability to work, to be substantially limited in the major life activity of working, a plaintiff must be unable to work in a broad class of jobs. *Sutton v. United Airlines*, 527 U.S. 471, 491 (1999); *Moore v. J.B. Hunt Transp., Inc.*, 221 F.3d 944, 953 (7th Cir. 2002) (*Moore*). The question under this standard is whether Plaintiff's condition "constitutes a significant barrier to his employment." *Moore*, 221 F.3d at 953.

At his deposition, Plaintiff stated that he has never been totally unable to work for any period of time because of his diabetes and neuropathy. Plaintiff also admitted that his diabetes and neuropathy have never prevented him from performing a broad range of jobs in the sales industry. Asked whether Plaintiff believed he was capable of performing other kinds of sales jobs aside from inside sales, Plaintiff responded, "Very much qualified for anything outside, yes." Plaintiff now attempts to withdraw this admission. Plaintiff argues, based on conclusory allegations made in his affidavit, that his difficulty in securing a position through the Medically Restricted Job Search process and his failure to hold a job for over four months since he was terminated by Defendant[2] show that he cannot perform a broad class of jobs. However, this contention, which flatly contradicts Plaintiff's statements at his deposition, does not create a genuine issue of material fact with respect to this question. *See Amadio v. Ford Motor Co.*, 238 F.3d 919, 296 (7th Cir. 2001) ("where a deposition and affidavit are in conflict, the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken . . ."). That Plaintiff was unable to secure a job during his job search and that he has only worked four

---

[2]The parties dispute the extent of Plaintiff's employment since leaving the Company, with Defendant arguing that Plaintiff has since held two jobs and that he was employed for eleven months rather than four months at a single job. This dispute is not material because Plaintiff admits that his medical condition was not a factor in leaving that job.

months at another sales position (leaving that position for reasons unrelated to his medical condition) does not demonstrate that Plaintiff cannot perform a broad class of jobs. In fact, his deposition testimony that he was "very much qualified" and capable of performing any outside sales job demonstrates exactly the opposite. Therefore, Plaintiff is not substantially limited in the major life activity of working.

As detailed above, Plaintiff cannot show that he has a physical or mental impairment that substantially limits one or more major life activities. Thus, to qualify as disabled under the ADA, plaintiff must either show that he has a record of such an impairment or he is regarded as having such an impairment by his employer. *See Kampmier*, 472 F.3d at 937. Plaintiff does raise the former basis so his status under the ADA depends on whether Defendant regarded Plaintiff as having such an impairment.

Plaintiff submits almost no evidence or argument with respect to this point and focuses mainly on whether Plaintiff was substantially impaired rather than on Defendant's perception of the alleged impairment. However, Plaintiff does suggest that Diann Taylor, a Human Resources Assistant who assisted Plaintiff during his second Medically Restricted Job Search, viewed him as being disabled. Plaintiff's evidence for this is that Ms. Taylor allegedly refused to let Plaintiff apply for certain sales positions, which required five hours of continuous driving, because she allegedly believed that Plaintiff's condition would not allow him to drive more than four hours.

Even if Plaintiff's conclusion regarding Ms. Taylor's opinion of his driving ability is correct, that belief does not establish that Defendant perceived Plaintiff to have a physical or mental impairment that substantially limits one or more major life activities. First, although the Seventh Circuit has not decided the issue, *see Sinkler v. Midwest Property Management Ltd.*

11

*Partnership*, 209 F.3d 678, 685 (7th Cir. 2000), other courts in this district have persuasively held that driving is not a major life activity. *See Green v. Pace Suburban Bus*, 2004 WL 1574246 at *6-7 (N.D. Ill. 2004); *Yindee v. Commerce Clearing House, Inc.*, 2005 WL 1458210 at *3 (N.D. Ill. 2005). Furthermore, as discussed above in the context of walking, four hours is not a very short period of time. Thus, Plaintiff's four-hour driving limitation, as purportedly perceived by Ms. Taylor, would not be a substantial limitation on his ability to drive. Therefore, Plaintiff has failed to raise a genuine issue of material fact regarding Defendant's perception of Plaintiff's impairment.

For the reasons discussed above, Plaintiff cannot establish that he is covered by the ADA, the first element of a *prima facie* case. Plaintiff also fails to establish the second element, that he was meeting his employer's legitimate employment expectations. During the entire time Plaintiff was an Account Manager in the MMA group, he did not meet his sales goals. Plaintiff argues that while he was participating in his Medically Restricted Job Search, he was not required to meet his sales quotas and, thus, because Defendant set no sales goals for him during this period, it was not possible for him to fall below his expected performance level during the period of time immediately preceding his termination. Plaintiff's argument is not convincing. Plaintiff admitted during his deposition that during his second Medically Restricted Job Search, Defendant was paying him to do nothing. It can hardly be said that such a situation amounts to satisfactory job performance. Therefore, because Plaintiff cannot show these two contested elements, he cannot establish a *prima facie* case for discrimination under the ADA.

Plaintiff also alleges that Defendant retaliated against him for activities protected under the ADA. To establish a *prima facie* case for retaliation under the ADA a plaintiff must show that (1) after engaging in a protected activity, such as filing a charge, (2) he was subjected to an adverse employment action, (3) he was performing his job satisfactorily, and (4) no similarly situated employee who did not file a charge was subjected to the adverse employment action. *Mannie v. Potter*, 394 F.3d 977, 984 (7th Cir. Ill. 2005). As explained above, Plaintiff cannot show that he was performing his job satisfactorily. Therefore, Plaintiff cannot establish a *prima facie* case for retaliation.

Plaintiff also cannot show retaliation through the direct method. Plaintiff argues that his termination by Defendant, coming months after his second Charge of Discrimination filed with the EEOC and submission of his revised medical restrictions, amounts to circumstantial evidence of discrimination. Plaintiff again, however, fails to connect the two with any circumstantial or direct evidence of unlawful motive on the part of Defendant. Plaintiff's allegations amount to only the first two prongs of the burden-shifting or "indirect" method outlined above – a protected activity followed by an adverse employment action. Rather than meeting the evidentiary requirements of the direct method, Plaintiff's allegations satisfy only partially the requirements of the indirect method. Timing alone is not sufficient to show retaliation. *See Kodl v. Bd. of Educ.*, 490 F.3d 558, 563 (7th Cir. 2007) (proximity of termination and protected activity is not alone sufficient to withstand summary judgment); *Pugh v. City of Attica*, 259 F.3d 619, 630 (7th Cir. 2001) (same). Therefore, Plaintiff cannot support a claim of retaliation against Defendant.

13

Finally, Plaintiff has alleged that Defendant failed to accommodate his disability by refusing to let Plaintiff work from home, denying Plaintiff the use of certain expense accounts and a company car, and by failing to find Plaintiff a job within the Company that fit within his medical restrictions. However, because Plaintiff is not disabled within the meaning of the ADA, his accommodation claim fails as a matter of law. *See Robinson v. Morgan Stanley Dean Witter*, 2007 WL 2566294 at \*5 (N.D. Ill. 2007).

Furthermore, even if Plaintiff could show that he was disabled under the ADA, his accommodation claim would still fail. Allowing an employee to work from home is not a reasonable accommodation required by the ADA. *See Vande Zande v. Wisconsin*, 44 F.3d 538, 544 (7th Cir. 1995) ("Generally, . . . an employer is not required to accommodate a disability by allowing the disabled worker to work, by himself, without supervision, at home.") Plaintiff's claim that Defendant was required to accommodate his disability by reassigning him to an open position also fails; Plaintiff has not shown that there was a vacant position available for which he was qualified. *See Ozlowski v. Henderson*, 237 F.3d 837, 840 (7th Cir. 2001) ("It is the plaintiff's burden to show that a vacant position exists for which he was qualified.").

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment is granted.

Dated: June 26, 2008

JOHN W. DARRAH
United States District Court Judge

14